STATE OF NORTH CAROLINA v. ANDRE DEMETRIUS GREEN

No. COA95-936

(Filed 5 November 1996)

1. **Infants and Minors § 99 (NCI4th)— juvenile—trial as adult—statute governing transfer to superior court—not unconstitutionally vague**

   The challenge of a juvenile defendant to N.C.G.S. § 7A-610, which provides for the transfer of juveniles to superior court for trial as adults, was without merit where defendant contended that the statute was vague and overbroad based on language which required the district court to determine whether the needs of the juvenile or the best interest of the State would be served by transfer to superior court. Identical language in the predecessor statute and was held not to violate a defendant's due process rights.

   **Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

   **Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

2. **Infants and Minors § 99 (NCI4th)— juvenile—trial as adult—discretion of district court judge—statement of reasons—findings not needed**

   The decision to transfer a juvenile's case to superior court lies solely within the discretion of the district court judge and, in making this decision, district court judges need only state the reasons for the transfer and need not make findings of fact to support the conclusion that the needs of the juvenile or the best interests of the State would be served by the transfer.

   **Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

   **Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

3. **Infants and Minors § 99 (NCI4th)— juvenile—trial as adult—consideration of rehabilitative potential**

   A district court judge considered a juvenile defendant's rehabilitative potential in deciding whether to transfer the juvenile to

superior court for trial as an adult, whether or not such consideration was necessary.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

4. **Infants and Minors § 99 (NCI4th)— juvenile—decision to try as adult—history of assaultive behavior—evidence of unadjudicated acts**

A district court judge did not abuse her discretion by relying on a juvenile defendant's history of assaultive behavior when transferring him to superior court for trial as an adult where evidence of unadjudicated acts came from a juvenile court psychologist based on information she received directly from defendant and his mother. This information was sufficiently reliable. *State v. Vinson*, 298 N.C. 640, did not address the type of evidence that can validly support a transfer decision.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

5. **Infants and Minors § 99 (NCI4th)— juvenile—transfer to superior court for trial as adult—reasons for transfer**

A district court judge did not abuse her discretion in transferring a juvenile defendant to superior court for trial as an adult by relying as reasons for the transfer on the victim being a stranger to defendant, the strength of the probable cause evidence, the serious nature of the offenses, the community's need to be aware of and protected from this type of serious criminal activity, and defendant's acknowledgment that he has a temper.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

STATE v. GREEN

[124 N.C. App. 269 (1996)]

6. **Infants and Minors § 99 (NCI4th)— juvenile—transfer to superior court for trial as adult—reliance of defendant's confession**

The district court judge did not err in transferring a juvenile defendant to superior court for trial as an adult by relying on defendant's confession where defendant did not move to suppress the confession in the juvenile proceedings but made such a motion in superior court, where it was denied. The superior court's rulings were supported by competent evidence and there was no error in his conclusions; since the confession was legally obtained, the district court judge did not err in considering it at the transfer hearing.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

7. **Infants and Minors § 98 (NCI4th)— juvenile—photo lineup—improper—subsequent confession not the result**

There was no plain error in a district court's decision to transfer a juvenile to superior court for trial as an adult where the court relied on a juvenile defendant's confession which defendant contended was the result of an illegal non-testimonial identification proceeding. While the detective did not comply with N.C.G.S. § 7A-596 in conducting a photo lineup, defendant has not produced evidence which tends to show that his subsequent confession was the direct result of the photo lineup; that the confession occurred after defendant learned that the victim had identified him in a photo lineup is too tenuous. Additionally, the court made several findings to support its transfer order which are wholly independent of the State's compliance with N.C.G.S. § 7A-596.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

8. **Infants and Minors § 99 (NCI4th)— juvenile—transferred for trial as adult—thereafter treated as adult**

The trial court did not err in a prosecution for first-degree sexual offense, attempted first-degree rape, and first-degree bur-

glary by denying defendant's motion to dismiss and in not instructing the jury on the common law doctrine of *doli incapax* where defendant was thirteen years old at the time of the offenses. Although the doctrine of *doli incapax* may still apply in other contexts, the General Assembly has indicated an intent that thirteen year olds transferred pursuant to N.C.G.S. § 7A-608 and N.C.G.S. § 7A-610 are transferred for trial "as in the case of adults" and are thereafter to be treated as adults.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 34 et seq.**

**Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.**

9. **Rape and Allied Sexual Offenses § 132 (NCI4th)— first-degree sexual offense and attempted first-degree rape— use of deadly weapon—infliction of serious bodily harm— disjunctive instruction**

There was no plain or constitutional error in a prosecution for first-degree sexual offense and attempted first-degree rape where the trial court charged the jury in the disjunctive on the use of a deadly weapon or the infliction of serious personal injury, which raise both offenses from second to first-degree. Although defendant contends that the instruction deprived him of a unanimous verdict, there is no meaningful difference between this instruction and the instruction in *State v. Belton*, 318 N.C. 141.

**Am Jur 2d, Rape §§ 108 et seq.**

10. **Indigent Persons § 19 (NCI4th)— rape, burglary, and sexual offense—possibility of organic brain disorder—motion for appointment of experts—denied**

The trial court did not err in a prosecution for first-degree sexual offense, attempted first-degree rape, and first-degree burglary by denying defendant's motion for a court appointed expert neuropsychiatrist or neuropsychologist where defendant was examined at Dorothea Dix Hospital to determine his capacity to stand trial; the Director of Forensic Psychiatry sent a report stating that defendant was competent to stand trial, with an evaluation attached from a clinical psychologist in which the psychologist noted the possibility of an organic brain disorder; the court

found that only the psychologist mentioned this possibility and that neither of the two psychiatrists who signed the report referred to an organic brain disorder; and the trial court denied defendant's motion but agreed to reconsider if defendant obtained an affidavit from the clinical psychologist or a medical expert based on that expert's review of the report showing that further examination might indicate whether defendant suffers from organic brain disorder. The court did not require defendant to pay for an additional examination; he was only required to obtain affidavits based on his previous examination at Dorothea Dix.

**Am Jur 2d, Expert and Opinion Evidence § 192; Witnesses § 736.**

11. **Rape and Allied Sexual Offenses § 231 (NCI4th); Constitutional Law § 369 (NCI4th)— mandatory life sentence—first-degree sexual offense—thirteen-year-old defendant—not cruel and unusual**

The imposition of the mandatory sentence of life imprisonment for a first-degree sexual offense by a defendant who was thirteen when the crime was committed was neither cruel nor unusual punishment under the Constitutions of North Carolina and the United States. It has been held that a life sentence for a first-degree sexual offense does not constitute cruel and unusual punishment and the General Assembly has the discretionary authority to examine our society's evolving standards of decency and to determine when children may be tried as adults.

**Am Jur 2d, Rape §§ 114, 115.**

Appeal by defendant from judgments and commitments entered 26 January 1995 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 14 May 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth R. Bare, Associate Attorney General T. Brooks Skinner, Jr., and Special Assistant Attorney General Gwynn T. Swinson, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Janine M. Crawley; and Samuel L. Bridges; for defendant-appellant.*

LEWIS, Judge.

Defendant appeals his convictions and sentences for first-degree sexual offense, attempted first-degree rape, and first-degree burglary. We hold that defendant had a fair trial free of prejudicial error.

Evidence presented at trial tends to show the following: On the night of 27 July 1994, the victim was awakened by someone knocking on her door. She immediately telephoned "911," and while on the phone, she heard glass break. Defendant entered her bedroom brandishing a mop stick while she wielded a golf club in an attempt to repel her attacker. Defendant swung the mop stick, and she swung the golf club. Both broke on contact. Defendant then pushed the victim onto her bed, slapped her multiple times, and engaged in various sex acts with her against her will. The police arrived during the assault. As they entered the back door, defendant ran out the front door. At the time, defendant lived with his mother and sister in the same apartment complex as the victim.

Evidence presented at the probable cause and transfer hearing shows the following: When defendant was first questioned in the early morning hours of 28 July 1994, he denied any involvement in the assault. The next day he was questioned at the Fuquay-Varina Police Department and confessed to breaking into and entering the victim's apartment, slapping her twice, and engaging in various sexual acts with her against her will. Evidence presented at the superior court hearing on defendant's motion to suppress shows that his mother was present when he admitted to breaking into the victim's residence; however, when defendant confessed to the sexual assaults, his mother was out of the room.

The State filed juvenile petitions against defendant alleging first-degree sex offense, first-degree rape, and first-degree burglary. At the time of the offenses and the filing of the petitions, defendant was 13 years old.

On 18 August 1994, the petitions came on for hearing in the Juvenile Court Session of Wake County District Court, Judge Joyce A. Hamilton presiding. A probable cause hearing was conducted, and the court found probable cause as to first-degree sex offense, first-degree rape, and first-degree burglary. The State then moved under N.C. Gen. Stat. sections 7A-608 and 7A-610 to transfer the cases to superior court for trial of defendant as an adult. After a hearing, the motion for transfer was granted.

On 13 September 1994, defendant was indicted by grand jury on charges of first-degree sex offense, first-degree rape, and first-degree burglary. Prior to trial, defendant moved to suppress his confession. After hearing, this motion was denied on 20 December 1994 by Judge Donald W. Stephens. The cases were called for trial on 24 January 1995 during the Criminal Session of Wake County Superior Court, Judge Narley J. Cashwell presiding. The jury returned verdicts finding defendant guilty of first-degree sexual offense, attempted first-degree rape, and first-degree burglary. He was sentenced to mandatory life imprisonment for first degree sexual offense, six years imprisonment for attempted first-degree rape to run concurrently with the life sentence, and fifteen years imprisonment for first-degree burglary to run consecutively after the life sentence.

[1] In assignments of error numbers one and six, defendant contends that N.C. Gen. Stat. section 7A-610 fails to guarantee due process because it is vague and overbroad.

N.C. Gen. Stat. section 7A-610 provides, in pertinent part:

(a) If probable cause is found and transfer to superior court is not required by G.S. 7A-608, the prosecutor or the juvenile may move that the case be transferred to the superior court for trial as in the case of adults. The judge may proceed to determine whether the needs of the juvenile or the best interest of the State will be served by transfer of the case to superior court for trial as in the case of adults.

* * *

(c) Any order of transfer shall specify the reasons for transfer.

G.S. § 7A-610 (1995). A companion statute, N.C. Gen. Stat. section 7A-608, provides, in pertinent part:

The court after notice, hearing, and a finding of probable cause may transfer jurisdiction over a juvenile to superior court if the juvenile was 13 years of age or older at the time the juvenile allegedly committed an offense that would be a felony if committed by an adult.

G.S. § 7A-608 (1995).

Specifically, defendant challenges that portion of G.S. section 7A-610 which requires the district court to determine "whether the needs of the juvenile or the best interest of the State will be served by

transfer of the case to superior court." G.S. § 7A-610(a). This court has examined identical language in the predecessor statute to G.S. section 7A-610 (G.S. section 7A-280) and has held that G.S. section 7A-280 does not violate a defendant's due process rights. *In re Bullard,* 22 N.C. App. 245, 247-48, 206 S.E.2d 305, 306-307, *appeal dismissed,* 285 N.C. 758, 209 S.E.2d 279 (1974). As G.S. section 7A-610 contains language identical to that challenged in *Bullard, Bullard* controls here. We hold that defendant's due process challenge to the constitutionality of G.S. section 7A-610 is without merit.

**[2]** In assignments of error numbers two and six, defendant asserts that the district court abused its discretion by transferring his cases to superior court because it failed to consider his rehabilitative potential and based the decision on invalid reasons. We find no abuse of discretion. The decision to transfer a juvenile's case to superior court lies solely within the sound discretion of the district court judge and is not subject to review absent a showing of gross abuse of discretion. *In re Bunn,* 34 N.C. App. 614, 615-16, 239 S.E.2d 483, 484 (1977) (reviewing transfer decision under prior transfer statute, G.S. section 7A-280). In making this decision, a district court judge need only state reasons for the transfer, *see* G.S. section 7A-610(c); he need not make findings of fact to support his conclusion that the needs of the juvenile or the best interest of the State would be served by the transfer. *Bunn,* 34 N.C. App. at 616, 239 S.E.2d at 484.

**[3]** Defendant asserts that the district court did not consider his rehabilitative potential when ordering the transfer. However, he cites no statute or case which requires a district court judge to consider the rehabilitative potential before making a transfer decision. However, assuming for the sake of argument, that such consideration is required, the record shows that the court *did* consider defendant's rehabilitative potential.

Dr. Barbara Gottlieb, a juvenile court psychologist, examined defendant in order to evaluate whether his needs could be addressed within the juvenile system. She testified extensively at the transfer hearing about defendant's needs and other matters related to his potential for rehabilitation, such as his abilities and background. At the end of the transfer hearing, Judge Hamilton stated:

> . . . *I know there's probably a lot more available in juvenile court as far as treatment is concerned . . . . And he may very well be treated better in district court, as far as his problem is*

*concerned and as far as the ability of the court system to deal with his sexual offenses and to try to do what we can to change that.*

> *Be that as it may, . . ., I'm going to bind this case over to superior court.*

(Emphasis added). We conclude that the testimony of Ms. Gottlieb and this statement demonstrate that the court did consider defendant's rehabilitative potential, whether or not such consideration was necessary.

Defendant further asserts that three of the reasons stated by the court in its transfer order are invalid. These are: (1) defendant's history of assaultive behavior (i.e., getting into fights at school); (2) the fact that the victim was a stranger to defendant; and (3) the strength of the probable cause evidence.

**[4]** Defendant asserts that the court's reliance on his "history of assaultive behavior" was improper because it was not based on reliable evidence. Citing *In re Vinson*, 298 N.C. 640, 260 S.E.2d 591 (1979), he asserts that the court improperly relied on Ms. Gottlieb's testimony concerning the fights in school and his statements to her regarding his temper. *Vinson* dealt, *inter alia*, with a district court's consideration of unadjudicated acts in a dispositional hearing for a juvenile who had been adjudicated delinquent. *See Vinson*, 298 N.C. at 663, 260 S.E.2d at 605. Since it did not address the type of evidence that can validly support a transfer decision, *Vinson* is not controlling in this context.

Furthermore, in *Vinson*, the Supreme Court permitted the consideration of unadjudicated acts so long as the information was reliable and accurate and was competently obtained. *Id.* at 669, 260 S.E.2d at 608. In *Vinson*, the record did not reveal the source of the disputed information or any findings as to its accuracy. *Id.* at 668, 260 S.E.2d at 608. Here, evidence of the unadjudicated acts came from a juvenile court psychologist based on information she received directly from defendant and his mother. We conclude that this information was sufficiently reliable. The court did not abuse its discretion by including this information in its statement of reasons for transfer.

**[5]** Defendant also takes issue with two other reasons stated by the court: (1) that the victim was a stranger to defendant, and (2) the strength of the probable cause evidence. We note that in the transfer

order, the court also listed additional reasons: the serious nature of the offenses, the community's need to be aware of and protected from this type of serious criminal activity, and defendant's acknowledgment that he has a temper.

This court has upheld a transfer based on reasons similar to those stated by the district court here. *See Bunn*, 34 N.C. App. at 616, 239 S.E.2d at 484 (upholding transfer based on deadly nature of the assault, the defendant's history of delinquency, and the interest of the State in protecting its citizens). In accordance with *Bunn*, we hold that the trial court did not abuse its discretion by relying on the challenged reasons in transferring defendant's cases to superior court.

[6] In assignment of error number three, defendant asserts that the court erred by relying on an illegally obtained confession in deciding whether to transfer his cases to superior court. He contends that his confession to the sexual assaults was illegally obtained because neither his parent nor his attorney was present, as required by N.C. Gen. Stat. section 7A-595(b), when he confessed to these acts and because his waiver of his rights was not knowing and voluntary.

We first note that defendant has failed to preserve this assignment of error for our review. The record shows that defendant did not object to or move to suppress his confession at the juvenile court probable cause and transfer hearing. N.C. Gen. Stat. section 15A-1446(a) provides that error may not be asserted upon appellate review unless the error was brought to the attention of the trial court by appropriate and timely objection or motion. Similar provisions are found in N.C.R. App. P. 10(b)(1) (1996) and N.C.R. Evid. 103(a)(1) (1992). G.S. section 15A-1446(d) provides specific exceptions to this rule; however, none of these exceptions are claimed by defendant here.

Defendant has also failed to preserve any contention that the court committed "plain error" by considering the confession because he has not "specifically and distinctly contended," *see* N.C.R. App. P. 10(c)(4) (1996), that the court committed "plain error" in considering the confession at the juvenile court probable cause and transfer hearing.

However, in the interest of justice, we exercise our discretion to review defendant's contentions. Although defendant did not move to suppress the confession in the juvenile proceedings, he did make such a motion in the superior court. After hearing, Judge Donald W.

Stephens denied the motion in an order in which he ruled that the confession was not illegally obtained and was admissible at trial. The trial court's findings of fact are binding on appeal if supported by competent record evidence. *State v. Rook*, 304 N.C. 201, 212, 283 S.E.2d 732, 740 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). After review, we conclude that Judge Stephens' findings are supported by competent record evidence and we find no error in his conclusions of law. Since the confession was legally obtained, the district court did not err in considering it in the transfer hearing.

[7] In assignments of error numbers three and four, defendant asserts that the court's reliance on his confession in making the transfer decision was plain error because the confession was the fruit of an illegal non-testimonial identification proceeding.

N.C. Gen. Stat. section 7A-596 provides that "[n]ontestimonial identification procedures shall not be conducted on any juvenile without a court order . . . . '[n]ontestimonial identification' means identification by . . . photographs, and lineups . . . ." G.S. § 7A-596 (1995). The record does not show that the detective obtained a court order prior to taking a photograph of defendant. Rather, the detective took a photograph of defendant with his consent shortly after the crime occurred and later used it in a photo lineup in which the victim identified defendant as the perpetrator.

While it is clear that the detective's actions did not comply with G.S. section 7A-596, defendant has not produced any evidence which tends to show that his subsequent confession was the direct result of the photo lineup. The sole basis for his assertion is that the confession occurred *after* he learned that the victim had identified him in a photo lineup. We find this connection too tenuous.

In addition, the trial court made several findings to support its transfer order, including: (1) the serious nature of the offenses; (2) the victim's status as a stranger in relation to the defendant; (3) the community's need to be aware of and protected from this serious type of criminal activity; (4) the defendant's history of assaultive behavior; and (5) strong evidence of probable cause presented based on testimony from the victim and the defendant's confession to law enforcement. Assuming, for the sake of argument, that defendant's confession was the fruit of the illegal identification proceeding, since the trial court's other findings are wholly independent of the State's noncompliance with section 7A-596, the trial court's reliance on defendant's confession constitutes, at best, harmless error under

the facts and circumstances of the present case. *See* N.C. Gen. Stat. § 15A-1443.

In sum, we hold that the trial court did not abuse its discretion by deciding to transfer defendant's cases to superior court.

[8] In assignments of error numbers fifteen and seventeen, defendant asserts that the trial court erred in denying his motion to dismiss and in instructing the jury. He grounds both of these assignments of error on the assertion that the trial court should have applied the doctrine of *doli incapax* when evaluating the sufficiency of the evidence and when instructing the jury.

Under the common law doctrine of *doli incapax*, children below the age of seven are conclusively presumed to be incapable of committing a crime. *State v. Rogers*, 275 N.C. 411, 424, 168 S.E.2d 345, 352 (1969), *cert. denied*, 396 U.S. 1024, 24 L. Ed. 2d 518 (1970); *State v. Yeargan*, 117 N.C. 706, 707, 23 S.E. 153, 154 (1895). According to this doctrine, children between the ages of seven and fourteen are also presumed incapable of committing a crime but the presumption may be rebutted by proof that the child is capable of discerning between good and evil. *Id.*

The State contends that the General Assembly has superseded the doctrine of *doli incapax* for children between the ages of thirteen and fourteen by amending G.S. section 7A-608 to reduce the age at which a juvenile can be transferred to superior court.

N.C. Gen. Stat. section 4-1 provides:

All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, *and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete*, are hereby declared to be in full force within this State.

G.S. § 4-1 (1986) (emphasis added). When the General Assembly legislates in respect to the subject matter of a common law rule, the statute supplants the common law rule in regard to that matter. *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956).

In cases decided after the juvenile courts were established in 1919, *see* 1919 N.C. Sess. Laws ch. 97, our appellate courts have repeatedly referred to the doctrine of *doli incapax. See e.g., Rogers*,

275 N.C. at 424, 168 S.E.2d at 352-53; *Walston v. Greene*, 247 N.C. 693, 695, 102 S.E.2d 124, 125 (1958); *State v. Smith*, 213 N.C. 299, 303, 195 S.E. 819, 821 (1938); *In re Register*, 84 N.C. App. 336, 349, 352 S.E.2d 889, 896 (1987).

However, these cases, decided prior to 1994, do not assess the impact of the 1994 amendment to G.S. section 7A-608 in which the General Assembly reduced the age at which a juvenile may be transferred to superior court from fourteen to thirteen. 1994 N.C. Sess. Laws (Extra Session) ch. 22, § 25. When a thirteen-year-old is transferred pursuant to this statute and G.S. section 7A-610, he or she is transferred for trial "as in the case of adults." G.S. § 7A-610. With the language "as in the case of adults," the General Assembly has indicated an intent that thirteen-year-olds who are transferred are thereafter to be treated *as adults*. Although the doctrine of *doli incapax* may still apply in other contexts, we conclude that G.S. section 7A-608, as amended, expresses legislative intent to supersede the doctrine of *doli incapax* in the context of the transfer of a juvenile, between the ages of thirteen and fourteen, to superior court for trial.

We therefore hold that the trial court did not err in denying defendant's motion to dismiss. There was also no error in omitting an instruction on the doctrine of *doli incapax*.

[9] In assignment of error number eighteen, defendant asserts that the trial court committed plain and constitutional error by instructing the jury in the disjunctive on first-degree sex offense and first-degree attempted rape thus denying him his constitutional right to a unanimous jury verdict.

More specifically, defendant assigns error to the court's instruction on the element, common to both offenses, which elevates both second-degree attempted rape and second-degree sex offense to first-degree. On this element of both offenses, the trial court instructed the jury that "the State must prove . . . that the defendant . . . employed a dangerous or deadly weapon . . . *or*, that the defendant . . . inflicted serious personal injury upon [the victim]." (Emphasis added)

A defendant is entitled to a unanimous jury verdict when convicted of a crime. N.C. Const. art. I, § 24; N.C. Gen. Stat. § 15A-1237(b) (1988). In *State v. Lyons*, 330 N.C. 298, 412 S.E.2d 308 (1991), our Supreme Court discussed the unanimity requirement in regard to disjunctive instructions and distinguished two separate lines of cases,

represented by *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986) and *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). *Lyons*, 330 N.C. at 301-306, 412 S.E.2d at 311-14.

Under *Lyons*, the unanimity requirement is violated in cases like *Diaz* when the acts charged in the disjunctive each constitute a "separate offense" for which a defendant could be separately punished. *Id.* at 302-303, 306, 412 S.E.2d at 312, 314. However, the unanimity requirement is not violated, in accordance with the *Hartness* line of cases, when the acts charged in the disjunctive constitute " 'a single wrong' " which can be established by " 'a finding of various alternative elements.' " *Id.* at 306, 412 S.E.2d at 314. (quoting *Hartness*, 326 N.C. at 566, 391 S.E.2d at 180.) Our Supreme Court considered an argument similar to that made by defendant in *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986). In *Belton*, the Court applied *State v. Creason*, 313 N.C. 122, 326 S.E.2d 24 (1985), a case identified in *Lyons* as belonging with the *Hartness* line of cases. *See Lyons*, 330 N.C. at 306, 412 S.E.2d at 314. The *Belton* Court rejected the defendants' assertion that they were deprived of unanimous verdicts when the trial court instructed the jurors that they could find the defendants guilty of first-degree rape and first-degree sexual offense if they found that defendants employed a deadly weapon *or* were aided and abetted by another. *Belton*, 318 N.C. at 165, 347 S.E.2d at 770. We find no meaningful difference between the disjunctive instruction challenged in *Belton* and the instructions given here. Thus, we find no error.

[10] In his eighth assignment of error, defendant asserts that the trial court violated his due process rights by denying his motion for a court-appointed expert neuropsychiatrist or neuropsychologist to assist in preparation of his defense.

Under N.C. Gen. Stat. section 7A-450(b), the State must provide an indigent defendant "with counsel and the other necessary expenses of representation." G.S. 37A-450(b) (1995); *State v. Freeman*, 93 N.C. App. 380, 385, 378 S.E.2d 545, 548, *disc. review denied*, 325 N.C. 229, 381 S.E.2d 787 (1989). In addition, if a defendant makes a threshold showing that: (1) his sanity at the time of the offense will be a significant factor at trial, or (2) the issue of whether he may pose a danger in the future will be a significant factor at sentencing, the court may be required to provide the defendant access to psychiatric assistance on these issues. *Ake v. Oklahoma*, 470 U.S. 68, 74, 86-87, 84 L. Ed. 2d 53, 60, 68 (1985).

STATE v. GREEN

[124 N.C. App. 269 (1996)]

Our Supreme Court has interpreted these requirements to require appointment of expert assistance for an indigent defendant only if the defendant makes "a particularized showing that (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." *State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992). " '[M]ere hope or suspicion that favorable evidence is available is not enough to require that such help be provided.' " *Id.* at 657, 417 S.E.2d at 471-72 (quoting *State v. Holden*, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988), *post-conviction relief granted*, 338 N.C. 394, 450 S.E.2d 878 (1994)).

On 20 September 1994, the trial court issued an order committing defendant to Dorothea Dix Hospital for examination to determine his capacity to stand trial. After defendant was examined, the Director of Forensic Psychiatry at Dorothea Dix sent a report to the court stating that defendant was competent to stand trial. Attached to his report was an evaluation by a clinical psychologist. In his evaluation, the clinical psychologist noted that there was a possibility that defendant suffered from an organic brain disorder. In reviewing the report, the Court found that only the clinical psychologist mentioned this possibility and that neither of the two psychiatrists who signed the report made any reference to organic brain disorder.

Based solely on the inconclusive statements by the clinical psychologist, defendant moved the court to appoint an expert neuropsychiatrist or neuropsychologist to assess whether he suffers from an organic brain disorder. The trial court denied defendant's motion but agreed to reconsider if defendant obtained an affidavit showing that further examination might indicate whether defendant suffers from organic brain disorder. He permitted defendant to obtain this affidavit from either (1) the clinical psychologist who examined defendant or (2) a medical expert based on that expert's review of the Dorothea Dix report. Defendant contends that requiring him to obtain this affidavit renders his rights under *Ake* meaningless because, as an indigent, he could not pay to obtain the affidavit.

We conclude that the trial court did not err. By court order, defendant was examined by psychiatrists at Dorothea Dix. He was then given the opportunity to make a particularized showing of organic brain disorder by use of an affidavit, but declined to do so. The court did not require him to pay for an additional examination;

STATE v. GREEN

[124 N.C. App. 269 (1996)]

he was only required to obtain affidavits based on his previous examination at Dorothea Dix. Since he failed to make the requisite showing, we conclude that this assignment of error has no merit.

[11] In assignments of error numbers seven and twenty-one, defendant asserts that the mandatory sentence of life imprisonment for first degree sex offense is cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and cruel or unusual punishment under Article I, section 27 of the N.C. Constitution. In particular, he asserts that the life sentence is disproportionate to the offense and violates this society's evolving standards of decency given his young age, mental capacity, and lack of a prior criminal record.

Under the statutory sentencing provisions applicable to defendant, first-degree sexual offense is a Class B Felony carrying a mandatory sentence of life imprisonment. *See* G.S. § 14-27.4; N.C. Gen. Stat. § 14-1.1 (1993). Our Supreme Court has held that a life sentence for first-degree sexual offense does not constitute cruel and unusual punishment. *State v. Higginbottom*, 312 N.C. 760, 764, 324 S.E.2d 834, 837 (1985); *State v. Shane*, 309 N.C. 438, 445-46, 306 S.E.2d 765, 770 (1983), *cert. denied*, 465 U.S. 1104, 80 L. Ed. 2d 134 (1984).

Defendant's age, mental capacity, and lack of a prior criminal record do not change this result. He was found competent to stand trial and was tried and sentenced as an adult. The General Assembly has the discretionary authority to examine our society's evolving standards of decency and to determine when children may be tried as adults. By reducing the age at which a juvenile may be transferred to superior court for trial as an adult from fourteen to thirteen, the General Assembly made this choice. We hold that imposition of the mandatory sentence of life imprisonment on defendant for first degree sexual offense was neither cruel nor unusual punishment under the Constitutions of North Carolina and the United States.

Defendant's remaining assignments of error are deemed abandoned. *See* N.C.R. Civ. P. 28(a) (1996).

No error.

Judges JOHNSON and MARTIN, Mark D. concur.